Michael Witry, ISB #7960
**Intermountain Fair Housing Council**
4696 W Overland Rd, Ste 140
Boise, ID 83706
(208) 383-0695
Fax: (208) 383-0715
mwitry@ifhcidaho.org

*Attorney for Plaintiffs*

In the United States District Court

for the District of Idaho

| **Diamond House of SE Idaho, LLC, and Tornkvist Investments, LLC,** Plaintiff, v. **City of Ammon,** Defendant. | Case No. 4:18-cv-383 <br><br> **Complaint and Demand for Jury Trial** |
|---|---|

Plaintiffs Diamond House of SE Idaho, LLC, and Tornkvist Investments, LLC, sue the City of Ammon for housing discrimination against minor children based on their familial status. Plaintiffs allege that Defendant engages in discrimination based on familial status by imposing and posting rules that unreasonably restrict the presence of minor children, with the purpose or effect of excluding or otherwise discriminating against children in the City of Ammon.

### I. Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, and 42 U.S.C. § 3613.

2. Venue is proper in this Court because the events or omissions giving rise to these claims occurred in the District of Idaho.

## II. The Parties

3. Plaintiff Diamond House of SE Idaho, LLC ("Diamond House") is an Idaho LLC with its principal place of business in Idaho Falls, Idaho. Its sole manager is Karen Tornkvist.

4. Plaintiff Tornkvist Investments, LLC ("Tornkvist Investments") is an Idaho LLC with its principal place of business in Idaho Falls, Idaho. Its sole manager is Karen Tornkvist.

5. Defendant City of Ammon ("Ammon") is an Idaho municipal corporation.

6. Tornkvist Investments owns a house at 1098 Diamond Circle in Ammon.

7. The 1098 Diamond Circle house and other residences located within the City are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

## III. Factual Allegations

*A. Summary of Allegations*

8. Plaintiff Diamond House applied for permission to operate a group home for foster children in the City of Ammon.

9. Ammon rejected Diamond House's application because "[t]he numbers of children… would in [the City's] opinion change the dynamics of the neighborhood in regards to the number of children and the potential of integrating the children in your care into the neighborhood community."

10. While Diamond House was attempting to secure permission to operate, Ammon amended its zoning ordinance to restrict group homes for foster children to a multi-family zone.

11. Ammon now prohibits group foster homes with more than seven children from operating in a single-family zone. It continues to allow day care centers for up to twelve children to operate in a single-family zone, and continues to allow any number of unrelated adults to live together in a single-family zone.

12. Ammon rejected Diamond House's second application because Diamond House did not plan to have a house parent.

13. Diamond House revised its business plan to employ a house parent. Ammon rejected this application as well.

### B. Tornkvist Establishes Diamond House

14. At all times relevant to this complaint, Ron Folsom, Scott Hall, and Cindy Donovan acted as agents of Ammon.

15. The State of Idaho does not have enough homes for foster children. The U.S. Census Bureau estimates that the population of Idaho grew by three percent between 2014 and 2016. During that time, the number of licensed foster homes in the state decreased by eight percent. This left the state with only 974 licensed foster homes to care for approximately 1,351 foster children. Of these children, approximately 121 of them reside in group foster homes.

16. Due, in part, to the foster parent shortage, the State of Idaho licenses group foster homes, which are residential facilities that provide "group child care for seven (7) but not more than twelve (12) children as an alternative to parental care." IDAPA 16.06.02.003.22.

17. The children who reside at group foster homes are in the custody of the State of Idaho. The state designates the organization that operates the homes as the children's custodians.

18. Group foster homes serve as the dwellings and the domiciles of the children who reside there for purposes of the Fair Housing Act.

19. Idaho law allows group foster homes to designate an official as a "caregiver." I.C. § 16-1602(8). A caregiver is the closest thing a child in a group foster home has to a resident parent: caregivers determine whether children participate in activities while in foster care, using the standard of care exercised by a reasonable and prudent parent. I.C. § 16-1644.

20. Tornkvist, a licensed therapeutic foster parent, established Diamond House on February 24, 2017, for the purpose of establishing group foster homes in the Idaho Falls metropolitan area.

### C. *Diamond Circle and Zoning*

21. 1098 Diamond Circle is one of a group of ten large homes of substantially identical design that were built on Diamond Circle in 2008, in the Oak Ridge subdivision. The homes each have six bedrooms and eight bathrooms, and were designed for group living.

22. Over the years, the homes on Diamond Circle have been used as assisted living homes and as rehabilitation homes.

23. The Diamond Circle homes are located close to schools: about half a mile north of the Acorn Children's Academy Montessori school and a little less than a mile southwest of the White Pine Charter School.

24. The Diamond Circle homes are in an R-1 zone. They are located about a block south of an R2-A zone, and about a block north of another R2-A zone on Chasewood Drive.

25. The R-1 zone allows for, among other uses, "one-family detached dwellings and accessory buildings, complying with all requirements of the zone including but not limited to setbacks and open space." Ammon City Code §§ 10-14-2; 10-12-2(A). The terms "one-family" and "family" are not defined in the Code.

26. The R-1 zone also allows for "Child Care Facilities allowing no more than twelve (12) children." Ammon City Code § 10-14-2; § 10-12-2(J). A "group child care facility" is "[a] home, place or facility providing child care for compensation for six (6) to twelve (12) children during part of a twenty-four (24) hour day." Ammon City Code § 6-3-2(Q).

27. As of 2011, 19.22% of the City of Ammon's acres were zoned R-1. Another 39.84% of the City's acres were in the similarly restricted R1-A, RP, and RP-A zones.

28. The City of Ammon considers the R2-A zone to be a multi-family zone. It allows for, among other things, "[t]ownhome, condominium, and apartment buildings containing not more than eight (8) dwelling units." Ammon City Code § 10-16-2(C).

29. As of 2011, 0.66% of the City of Ammon's acres were zoned R2-A. Another 2.02% of the City's acres were in the R-3 and R3-A zones, which permit the same uses as an R2-A zone.

30. As of 2008, the city's zoning code did not specifically address locations where group foster homes could be located. The 2008 version of Ammon City Code § 10-16-2 described "foster family care homes" as permitted uses in the R2-A residence zone, but did not define the term.

31. The city's zoning code does not place a cap on the number of unrelated persons who can live at any particular residence, unless the residence is an institutional residence such as an assisted living center, convalescent home, boarding house, lodging house, or rooming house. Ammon City Code §§ 10-16-2(B); 10-17-2(B).

32. Title 67, Section 6531 of the Idaho Code provides, "For the purpose of any zoning law, ordinance or code, the classification 'single family dwelling' shall include any group residence in which eight (8) or fewer unrelated persons with disabilities or elderly persons reside and who are supervised at the group residence in connection with their disability or age related infirmity."

33. Title 67, Section 6531 of the Idaho Code does not apply to foster homes unless the residents have disabilities, nor does it restrict group residences that do not meet its definition of "single family dwelling" from operating in any zone.

D. *Neighborhood Opposition to Group Living*

34. The Diamond Circle homes have been the subject of public debate since 2008. At an Ammon City Council meeting on November 6, 2008, Ammon city planner Ron Folsom stated that there were too many group homes on Diamond Circle:

35. The Ammon City Council took up a proposal to amend the zoning ordinance on May 4, 2011, which would have allowed "foster family care" in all residential zones.

36. At the May 4, 2011 city council meeting, two Ammon residents who lived approximately one mile east of Diamond Circle testified against these amendments because they opposed more children in the neighborhood.

37. The Ammon City Council voted down the proposed amendments.

38. The Ammon City Council addressed the Diamond Circle properties again on December 5, 2012, when Sean Finch applied to rezone the properties from R-1 to R-2A to make them more suitable for use as assisted living facilities. The owners intended to connect the buildings in pairs to create five sixteen-bedroom homes. The council amended the comprehensive plan to include rezoning the Diamond Circle properties.

39. The rezoning of the Diamond Circle properties came up for hearing on January 17, 2013. Residents of Ammon presented extensive testimony against rezoning the properties.

40. The Ammon City Council voted down the proposed rezoning.

E.  *Ammon Rejects Diamond House's Application*

41. In order to receive a license from the State of Idaho to house foster children at Diamond House, Tornkvist needed to demonstrate that Diamond House was in compliance with all applicable city ordinances. IDAPA 16.06.02.05(c).

42. On March 31, 2017, Tornkvist Investments purchased 1098 Diamond Circle with the intent to lease it to Diamond House.

43. On April 17, 2017, Tornkvist called Folsom to ask what she needed to do to operate Diamond House at 1098 Diamond Circle. Folsom told Tornkvist that she could apply for a special use permit.

44. As of April 17, 2017, the Ammon City Code did not expressly require a group foster home to obtain a special use permit to operate in an R-1 zone.

45. As of April 17, 2017 the Ammon City Code did not define the term "one-family" in such a way as to exclude a group foster home from the definition.

46. As of April 17, 2017, the Ammon City Code would not have required Diamond House to apply for a special use permit to house seven to twelve unrelated adults at 1098 Diamond Circle.

47. Tornkvist called Folsom again on September 27, 2017, to ask for more information about operating Diamond House at 1098 Diamond Circle. Folsom told Tornkvist that 1098 Diamond Circle was not zoned for a group foster home.

48. As of September 27, 2017, the Ammon City Code did not expressly exclude group foster homes from the R-1 zone.

49. As of September 27, 2017, the Ammon City Code did not define the term "one-family" in such a way as to exclude a group foster home from the definition.

50. As of September 27, 2017, the Ammon City Code would not prohibited seven to twelve unrelated adults from living together at 1098 Diamond Circle.

51. On September 27, 2017, Tornkvist asked Folsom if she could obtain a special use permit to operate Diamond House at 1098 Diamond Circle. Folsom told Tornkvist that the City Council was not accepting any more special use permit applications.

52. On October 3, 2017, Tornkvist called Scott Hall, the city attorney, to ask what she needed to do to operate Diamond House at 1098 Diamond Circle. Hall told Tornkvist to submit an application to Folsom.

53. On October 4, 2017, Tornkvist emailed Folsom an application for a business license for Diamond House. The application listed four houses: the one Tornkvist Investments already owned

at 1098 Diamond Circle, plus three identical houses at 994 Diamond Circle, 1046 Diamond Circle, and 1072 Diamond Circle.

54. On October 12, 2017, Folsom emailed Tornkvist, asking her to "provide the specific State and/or Federal codes you feel allow you to operate the proposed facility within a residential zone."

55. Later on October 12, 2017, Tornkvist emailed Folsom, attaching a copy of the Joint Statement of the Department of Justice and the Department of Housing and Urban Development entitled "Group Homes, Local Land Use, and the Fair Housing Act" ("HUD-DOJ Joint Statement").

56. On October 17, 2017, Folsom wrote to Tornkvist to reject her application, stating, in part, "The numbers of children that could be housed in the four units you are suggesting would in our opinion change the dynamics of the neighborhood in regards to the number of children and the potential of integrating the children in your care into the neighborhood community."

57. As of October 17, 2017, the Ammon City Code did not expressly exclude group foster homes from the R-1 zone.

58. As of October 17, 2017, the Ammon City Code did not define the term "one-family" in such a way as to exclude a group foster home from the definition.

59. As of October 17, 2017, the Ammon City Code would not prohibited seven to twelve unrelated adults from living together at 1098 Diamond Circle.

60. Tornkvist met with Folsom and Mayor Dana Kirkham on November 1, 2017, and November 21, 2017, to request reconsideration of Folsom's decision. On November 21, 2017, Folsom suggested that Tornkvist apply to rezone the Diamond Circle buildings to R2-A.

F. *Ammon Amends the Code to Restrict Foster Homes*

61. On December 6, 2017, the Ammon Planning and Zoning Commission took up a proposal to amend the city's zoning code.

62. The meeting minutes noted that "[f]oster family care homes were proposed to be added to [section] 10-16-2 under the section that includes assisted living centers and convalescent homes for not more than twenty residences." Section 10-16-2 is the code section that governs the R2-A zone.

63. During this meeting, Folsom stated that "we do have some areas in our city that have buildings that were designed for group homes that foster family care would fit in, but do we want it there?"

64. The Ammon City Council took up Ordinance 598 on December 21, 2017, and enacted it unanimously. Ordinance 958 is based on the ordinance the Planning and Zoning Commission discussed on December 6, 2017. Ordinance 598 is attached to this Complaint as Exhibit A.

65. Ordinance 598 amended the Definitions section to include a new definition for foster family care homes:

> For the purpose of the Ammon City Code Foster Family Care homes shall be defined as a location within the City where a minor or minors have been placed in a ward, group home, private home, or any other facility approved as an Idaho State-certified foster caregiver. This term shall not be construed to limit or restrict people within residential zones from serving as foster parents in their own home or residence.

Ammon City Code § 10-2-1.

66. Ordinance 598 amended Ammon City Code § 10-16-2 to read, in part, "The following uses shall be permitted in the R2-A Residence Zone: …(B) Assisted Living Centers, Foster family care homes or Convalescent Homes for not more than twenty (20) residents."

67. Ordinance 598 restricted foster family care homes of any size[1] to the R2-A zone and above, while continuing to allow any number of unrelated adults to live together in any residential zone.

---

[1] While "group foster homes" under Idaho law must contain between seven and twelve children, a "foster home" may accept six or fewer children. IDAPA 16.06.02.003.22; 16.06.02.003.19.

68. Ordinance 598 allowed child care facilities that care for six to twelve children to continue to operate in an R-1 zone, but prevents group foster homes of the same size from operating in an R-1 zone.

*F. Diamond House Tries Again*

69. On December 5, 2017, Alison Brace of the Intermountain Fair Housing Council (IFHC) wrote a letter to Hall on Diamond House's behalf. Brace wrote that the Fair Housing Act prohibited the City of Ammon from treating the foster children of Diamond House differently from biological children.

70. On December 11, 2017, Tornkvist resubmitted her application for a business license to Folsom via email.

71. On December 12, 2017, Folsom replied to Tornkvist's email of December 11, stating that he forwarded Tornkvist's request to the city attorney.

72. On December 13, 2017, Tornkvist emailed Folsom, asking for information on how to petition to rezone the buildings on Diamond Circle to R-2A.

73. On December 14, 2017, Folsom emailed Tornkvist, writing that:

> …the Diamond Street property has been through multiple hearings for rezone which have been denied because they were not consistent with the residential zoning in the surrounding neighborhoods.

74. Discouraged by Folsom's statement, Tornkvist elected not to petition to rezone the property.

75. Folsom did not disclose to Tornkvist that the City Council was considering amendments to the zoning code that would affect Diamond House.

76. On January 3, 2018—after Ordinance 598 was enacted—Tornkvist emailed Folsom, asking for information on available R-2A properties.

77. On January 4, 2018, Folsom emailed Tornkvist, stating that Ammon did not track that information.

78. Also on January 4, 2018, Folsom sent a letter to Brace, stating, in part:

> [G]roup homes do not qualify as being protected by 'familial status' under the Fair Housing Act because the employees of the group home are not domiciled at the group home with the minor children over whom they have guardianship.

79. Tornkvist revised Diamond House's business plan to employ a person as a house parent, who would be domiciled at the property with the children. This person would serve as a caregiver for the children pursuant to I.C. § 16-1644, and would be an agent of Diamond House.

80. On January 10, 2018, Tornkvist emailed Folsom, informing him that she had revised her plan to employ a house parent who would be domiciled at the property, and asking him to reconsider her application.

81. On January 18, 2018, Folsom emailed Tornkvist, asking for more information about the house parent and encouraging her to move to an R-2A property.

82. On January 23, 2018, Tornkvist emailed Folsom, providing more information about the house parent.

83. On January 24, 2018, Folsom emailed Tornkvist, rejecting her request for reconsideration.

84. Folsom retired from the City of Ammon at the beginning of May in 2018, leading Tornkvist to petition again with the new planning staff.

85. On May 10, 2018, Michael Witry of IFHC emailed Folsom's successor, Cindy Donovan, a letter, petitioning her to reconsider Folsom's decision.

86. Hall sent Witry a letter on May 15, 2018, stating that the City would not reconsider Folsom's decision.

87. Because the City of Ammon failed to certify that Diamond House complied with its zoning ordinance, the State of Idaho has not approved Diamond House's application to operate as a group foster home.

88. Because the City of Ammon failed to certify that Diamond House complied with its zoning ordinance, Tornkvist Investments purchased a substitute property in Idaho Falls on July 6, 2018, with the intent of leasing that property to Diamond House.

*G. Injuries*

89. The City of Ammon's actions directly and substantially injured Plaintiffs and their associated minor children by causing them to suffer a loss of civil rights and other damages, including lost housing opportunity, humiliation, and embarrassment. Accordingly, Plaintiffs are entitled to compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), and under 42 U.S.C. § 1983.

90. In doing the acts of which Plaintiffs complain, Defendant acted with reckless disregard of plaintiffs' federally protected fair housing rights. Accordingly, Plaintiffs seek to recover punitive damages pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c)(1).

91. There now exists an actual controversy between the parties regarding Defendant's duties under federal and state laws. Accordingly, Plaintiffs are entitled to declaratory relief under 42 U.S.C. § 3613(c)(1), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

92. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern and the practice of discrimination and unlawful conduct described in the complaint. Plaintiffs have no adequate remedy at law. They are now suffering and will continue to suffer irreparable injury as a result of Defendant's acts of discrimination and unlawful conduct unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), and Rule 65 of the Federal Rules of Civil Procedure.

**First Cause of Action**

(Fair Housing Act, 42 U.S.C. § 3601 *et seq.*)

93. Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as though fully set forth herein.

94. Plaintiffs are people who are domiciled with minor children for purposes of the Fair Housing Act.

95. In the alternative, Plaintiffs are people who are associated with minor children for purposes of the Fair Housing Act.

96. Defendant injured Plaintiffs by committing discriminatory housing practices, in violation of the Fair Housing Act., 42 U.S.C. §§ 3604(a), (b), (c), and 3617.

## Second Cause of Action

(Equal Protection)

97. Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as though fully set forth herein.

98. Defendant's restrictions on the operation of group foster homes in an R-1 zone violates Plaintiffs' right to equal protection of law because there is no reasonable relationship between its restrictions and a legitimate governmental purpose.

99. Defendant injured Plaintiffs by violating Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

## Relief Sought

*Wherefore,* Plaintiffs respectfully request that judgment be entered against Defendant as follows:

a. Declaring that Defendant's actions violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

b. Declaring that Defendant's actions violate Plaintiffs' right to substantive due process;

c. Enjoining Defendant to make all necessary modifications to their ordinances, policies, and procedures to comply with the Fair Housing Act;

d. Enjoining Defendant from enforcing Ordinance 598;

    e. Enjoining Defendant to undergo training on the requirements of the Fair Housing Act;

    f. Enjoining all unlawful practices alleged in this complaint and imposing affirmative injunctive relief requiring Defendant, its partners, agents, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all persons regardless of their familial status;

    g. Ordering Defendant to grant Plaintiff Diamond House a license to operate Diamond House at 1098 Diamond Circle in the City of Ammon;

    h. Awarding actual and punitive damages to Plaintiffs in amounts to be proven at trial;

    i. Awarding reasonable attorneys' fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 3613 and 42 U.S.C. § 1988; and

    j. Awarding such other relief as the Court deems just and proper.

## Jury Demand

Trial by jury is hereby demanded.

*Dated* this 29th day of August, 2018.

/s/

Michael Witry, ISB #7960

Intermountain Fair Housing Council

Attorney for Plaintiffs